See also 155 F.3d 566.

RICHLIN SECURITY SERVICE
COMPANY, Appellant,

v.

Kevin D. ROONEY, Acting Commissioner, Immigration and Naturalization Service, Appellee.

No. 00-1134.

United States Court of Appeals,
Federal Circuit.

July 2, 2001.

Before PAULINE NEWMAN,
LOURIE, GAJARSA, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Richlin Security Service Company was awarded two contracts for guard services by the Immigration and Naturalization Service. The contracts contained wage information pertaining to two classes of guard services, Guard I and Guard II.

Guard II wages are significantly higher than Guard I. However, both INS and Richlin believed that the contract required only Guard I services, and paid the Richlin guards according to the lower rate. Thereafter, the United States Department of Labor determined that the services performed under the contracts were properly classified and paid at the Guard II level.

Proceeding *pro se* through its owner and officer, Richlin requested that INS adjust the contract prices to reflect the DOL classifications. INS declined and Richlin appealed to the Department of Transportation Board of Contract Appeals, which awarded Richlin reformation of the contracts based on the mutual mistake of the parties to the contract.[1] However citing the seven years since the first payment of wages, the Board stated that "it would be premature at this time for the Board to establish the terms of such reformation. That can only be done after the liability of Richlin to make payments to the affected workers is formalized by appropriate action of the Labor Department." *Richlin I,* slip op. at 12. Thus the Board granted-in-part and denied-in-part Richlin's appeal, with the proviso that "such denial [is] without prejudice to make further claim at such time as any liability of Richlin for back wages becomes liquidated and satisfied." INS appealed to this court, which affirmed the decision of the Board.[2]

Richlin thereafter retained counsel, and sought to have its liability to its employees "formalized by appropriate action of the Labor Department." Following a DOL audit, Richlin and DOL entered into an agreement specifying the amount due each employee. The agreement also specified that the employees would be paid with any funds from INS before such funds were used to pay any other expenses such as payroll taxes, and before any of the money was distributed to Richlin. Richlin's counsel, Professor Gilbert J. Ginsburg, signed the agreement as an escrow agent for the funds. The agreement further provided that Richlin waived all defenses as to claims made by the employees, and that any amount due an employee who could not be located would be paid from the escrow account directly to the DOL. DOL agreed that "by virtue of the obligations undertaken in this Agreement, the obligations to the former employees of Richlin have been liquidated and satisfied."

Having thus structured its obligations and obtained DOL's approval, Richlin returned to the Board and petitioned for "Completion of the Reformation," enclosing the DOL agreement. The Board denied Richlin's petition.[3] The Board stated that *Richlin I* established a condition precedent to the reformation of the contract, that "any [Richlin] liability for back wages becomes liquidated and satisfied." The Board ruled that the agreement between Richlin and DOL was not effective to satisfy this condition, and that Richlin was required to "actually discharg[e] its back wage liability to some or all of its former employees prior to seeking reimbursement." *Richlin II,* slip op. at 8.

Richlin petitioned for reconsideration of the decision or, in the alternative, modification of the "liquidated and satisfied" portion of the earlier judgments on the ground that such language will result in a manifest injustice. Richlin pointed out that its financial condition is such that it

1. *Richlin Security Serv. Co.,* DOTCAB Nos. 3034, 3035 (March 20, 1997) (*Richlin I*).

2. *Meissner v. Richlin Security Serv. Co.,* 155 F.3d 566 (Fed.Cir.1998) (Table).

3. *Richlin Security Serv. Co.,* DOTCAB Nos. 3034, 3035 (January 22, 1999) (*Richlin II*).

has no funds to pay the former employees prior to reimbursement, and thus that the employees will not be paid absent a modification of the decision. The Board reaffirmed its earlier ruling, and held that the facts of the case did not compel a different result on the grounds of manifest injustice.[4] This appeal followed.

## DISCUSSION

It is not disputed that the INS owes Richlin's employees the underpaid wages. The Board's decision in *Richlin I* was that reformation was appropriate, but premature, based on its concern that Richlin might be unfairly enriched given the passage of time since the contract was performed. The Board wanted to be sure that Richlin did not benefit from moneys due employees who could not be located:

> We must take judicial notice of reality, and the reality is that given the passage of such a period [seven years], Richlin may or may not be able to locate each of the supposedly unpaid workers, and it may or may not be possible to calculate the amounts of any underpayments. If it does not make full payment to each of the involved workers, then Richlin would stand to reap a windfall from a decision granting the traditional relief. . . .
>
> Given the two-year administrative statute of limitations period followed by the Labor Department, we must conclude that not only is there at present no legal entitlement of those workers to the payments which Richlin now seeks to pass on to the respondent unless and until the Labor Department so directs, but in addition it is highly improbable that there will ever be any payments for work performed.

Richlin's subsequent contract with the DOL, including the escrow agreement with Professor Ginsburg, fully addresses the Board's concern about a "windfall." Richlin is formally bound to pay its employees whatever wages it receives from INS, and has waived all of its defenses, including the statute of limitations referred to by the Board. If any employees are not located, Richlin will not receive the money due them. Any excess funds will be transferred from the escrow account to DOL. Richlin also introduced evidence that it could not afford to meet the obligations to its employees subject to future reimbursement.

On this showing, the Board had the responsibility of directing the completion of the reformation of the contract as contemplated by *Richlin I*. "Every tribunal has inherent power to correct its own decisions to rectify an obvious error and prevent a manifest injustice." *E.H. Marhoefer, Jr. Co.*, DOBCAB Nos. 69–3, 70–1; *cf. Klapprott v. United States*, 335 U.S. 601, 614–15, 69 S.Ct. 384, 93 L.Ed. 1099 (1949) (courts have power to "vacate judgments whenever such action is appropriate to accomplish justice."). In view of the DOL–Richlin agreement which assures that Richlin will receive no benefit from these payments, it was unnecessary to require Richlin to pay the employees before INS supplied the funds to which it was obligated.

For the foregoing reasons, we *reverse* the Board's decision and *remand* for completion of the reformation, by the procedure established in Richlin's contract with the DOL with payment advanced by the INS to the escrow account.

---

4. *Richlin Security Serv. Co.*, DOTCAB Nos. 3034, 3035 (September 16, 1999) (*Richlin III*).