# United States Court of Appeals for the Federal Circuit

05-1085

RICHLIN SECURITY SERVICE COMPANY,

Appellant,

v.

MICHAEL CHERTOFF, SECRETARY OF HOMELAND SECURITY,

Appellee.

Gilbert J. Ginsburg, Attorney & Counselor-at-Law, of Washington, DC, argued for appellant.

Reginald T. Blades, Jr., Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director.

Appealed from:  United States Department of Transportation Board of Contract Appeals

# United States Court of Appeals for the Federal Circuit

05-1085

RICHLIN SECURITY SERVICE COMPANY,

Appellant,

v.

MICHAEL CHERTOFF, SECRETARY OF HOMELAND SECURITY,

Appellee.

_____

DECIDED:  January 31, 2006
_____

Before MAYER, RADER, and DYK, Circuit Judges.

DYK, Circuit Judge.

Richlin Security Service Company ("Richlin") appeals from a decision of the Department of Transportation Board of Contract Appeals (the "Board") denying Richlin's claim for $284,193.85 in interest under the Contract Disputes Act, 41 U.S.C. §§ 601 et. seq. ("CDA").  In re Richlin Sec. Servs. Co., 04-2 BCA ¶ 32,670 (DOTBCA 2004) ("Richlin IX").  We affirm.

## BACKGROUND

In April 1990 and August 1991, Richlin and the Immigration and Naturalization Service ("INS") entered into two fixed-price contracts for private security guard services. As a result of a mutual mistake, the contracts misclassified Richlin's employees as "Guard I" rather than "Guard II" under the wage classification scheme of the Service Contract Act, 41 U.S.C. §§ 351, et seq. ("SCA"), resulting in underpayment of Richlin's

employees. In February 1995, the Labor Department determined that the employees were entitled to back wages under the SCA. In March 1996, Richlin filed a claim for the back wages (and associated taxes) with the contracting officer. The contracting officer denied Richlin's claim, and Richlin appealed to the Board. In March 1997, the Board granted in part and denied in part Richlin's request for reformation of the contracts, holding that while reformation was the appropriate remedy, the Board would not specify the terms of the reformation until Richlin's back wage liability was "formalized by appropriate action of the Labor Department." In re Richlin Sec. Serv. Co., 98-1 BCA ¶ 29,651 (DOTBCA 1997) ("Richlin I"). The Board was concerned that prematurely awarding Richlin the underpaid wages could result in a windfall to Richlin, as the passage of years since Richlin performed the contracts might prevent Richlin from locating and paying all its former employees. The Board thus invited Richlin to petition for completion of the reformation "at such time as any liability of Richlin for back wages becomes liquidated and satisfied." Id. We affirmed. Meissner v. Richlin Sec. Serv. Co., 155 F.3d 566, 1998 WL 228175 (Fed. Cir. 1998) ("Richlin II") (unpublished table decision).

On September 22, 1998, after a Labor Department audit, Richlin and the Labor Department executed an agreement specifying: (1) that Richlin's employees were owed $636,818.72 in back wages; (2) that the back wages were to be paid into an escrow account administered by Richlin's counsel; (3) that any excess funds were to be remitted to the Labor Department; and (4) that the Labor Department "agrees that, by virtue of the obligations undertaken in this Agreement, the obligations to the former employees of Richlin have been liquidated and satisfied." J.A. at 123. The Board

denied Richlin's request to complete the reformation based on this agreement, holding that the agreement was not "the equivalent of Richlin actually discharging its back wage liability to some or all of its former employees prior to seeking reimbursement . . . ." In re Richlin Sec. Serv. Co., 99-1 BCA ¶ 30,219 (DOTBCA 1999) ("Richlin III"). The Board then denied Richlin's motion for reconsideration. In re Richlin Sec. Serv. Co., 99-2 BCA ¶ 30,562 (DOTBCA 1999) ("Richlin IV").

We reversed and remanded, noting that "[i]t is not disputed that INS owes Richlin's employees the underpaid wages," and that "Richlin pointed out that its financial condition [was] such that it ha[d] no funds to pay the former employees prior to reimbursement, and thus that the employees will not be paid absent a modification of the decision." Richlin Sec. Serv. Co. v. Rooney, 18 Fed. Appx. 843, 844-45, 2001 WL 744463 (Fed. Cir. 2001) ("Richlin V") (unpublished decision). We concluded, in the light of Richlin's financial troubles, that it was unnecessary to make Richlin pay its employees before receiving funds from the INS because the terms of the Richlin-Labor agreement "assure[d] that Richlin will receive no benefit from these payments." Id.

On remand, the Board awarded Richlin the amount of back wages specified in the Richlin-Labor agreement. In re Richlin Sec. Serv. Co., 02-2 BCA ¶ 31,876 (DOTBCA 2002) ("Richlin VI"). The Board then rejected Richlin's claim for additional labor costs because Richlin presented no evidence that it incurred any additional labor costs that were not fully compensated by the unreformed contract price, and because the Labor Department had determined that the amount specified in the Richlin-Labor agreement was the full extent of Richlin's back-wage liability. The Board also held that Richlin was entitled to payroll taxes incurred as a result of distributing the back wages.

In re Richlin Sec. Serv. Co., 03-1 BCA ¶ 32,301 (DOTBCA 2002) ("Richlin VII"). We affirmed. Richlin Sec. Serv. Co. v. Ridge, 99 Fed. Appx. 906 (Fed. Cir. 2004) ("Richlin VIII") (unpublished decision). The escrow agent distributed the back wages, and Richlin subsequently submitted proof of its associated tax liability to the Board. The majority of the taxes incurred as a result of distributing the back wages were paid from the escrow account, and the Board found INS liable for Richlin's remaining tax liability. Richlin IX, 04-2 BCA ¶ 32,670. Presumably, INS will deposit the taxes into the escrow account for disbursement to the taxing authorities by the escrow agent.

Richlin requested interest pursuant to the CDA's interest provision, 41 U.S.C. § 611. The Board denied Richlin's request, concluding that "there is nothing upon which interest could accrue" because "[t]he Board's award [in Richlin VI & VII] was not an amount found due [Richlin] but was an amount found due [Richlin's] former employees and the taxing authorities," and Richlin "did not advance its own funds to pay" the back wages. Richlin IX, 04-2 BCA ¶ 32,670. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 607(g)(1)(A).

## DISCUSSION

### I

The only issue here is whether interest on the award to Richlin is allowable under section 611. We review the Board's conclusions of law without deference. 41 U.S.C. § 609(b) (2000); West v. All State Boiler, Inc., 146 F.3d 1368, 1371 (Fed. Cir. 1998); E.L. Hamm & Assocs., Inc. v. England, 379 F.3d 1334, 1338 (Fed. Cir. 2004).

The Supreme Court has long held that "interest cannot be recovered in a suit against the government in the absence of an express waiver of sovereign immunity from

an award of interest." Library of Congress v. Shaw, 478 U.S. 310, 311 (1986); see, e.g., United States ex rel. Angarica v. Bayard, 127 U.S. 251, 260 (1888) (applying the "well-settled principle, that the United States are not liable to pay interest on claims . . . in the absence of express statutory provision").

This principle is equally applicable to the sovereign immunity waiver in section 611. That section provides

> Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41 (85 Stat. 97) for the Renegotiation Board.

41 U.S.C. § 611 (2000). We have recognized that "[a]n allowance of interest on a claim against the United States, absent constitutional requirements, requires an explicit waiver of sovereign immunity by Congress." Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983), cert. denied 464 U.S. 826 (1983), (citing United States v. N.Y. Rayon Co., 329 U.S. 654, 658-59 (1947)). Such an explicit waiver, where found, must be strictly construed. Id. (citing N.Y. Rayon Co., 329 U.S. at 659). We have also recognized that, with respect to section 611, "even a seemingly explicit [waiver] will not be effective if the language used appears too sweeping and contrary to the overall statutory scheme . . . ." Id.

We have previously considered the types of awards that may accrue interest under section 611 as "amounts found due contractors." In Servidone Construction Corp. v. United States, 931 F.2d 860 (Fed. Cir. 1991), we addressed the question whether section 611 allowed a contractor to collect interest on an award of an equitable increase in the total contract price when the contractor, at the time the initial claim was

filed, had not yet incurred all the claimed costs, though all costs were subsequently paid by the contractor. Relying on the plain language and legislative history of the statute, we concluded that section 611 "sets a single, red-letter date for interest on all amounts found due by a court without regard to when the contractor incurred the costs." Servidone, 931 F.2d at 862 (emphasis added). Put simply, we held that interest was available for costs "found due" the contractor, even though payment had not been made by the contractor on the claim date, because the contractor would ultimately be out of pocket for some period of time. See also Caldera v. J.S. Alberici Constr. Co., 153 F.3d 1381, 1383 (Fed. Cir. 1998) (relying on Servidone to affirm an award of interest on the full amount of an award of increase in the contract price made before the contractor incurred all additional costs necessitating the increase).

We next addressed the issue in Raytheon Co. v. White, 305 F.3d 1354 (Fed. Cir. 2002), where a contract to produce missile guidance systems for the Army was terminated for convenience by the government. The contractor filed a convenience termination claim, and the Board awarded the contractor an equitable adjustment to the total contract price plus interest on costs incurred. The Board denied interest on the percentage of the award representing estimated costs to complete. Raytheon, 305 F.3d at 1359, 1365. The contractor appealed to this court, challenging the Board's decision not to award interest under section 611 on the award of costs that the contractor would have incurred but for termination of the contract.

While we recognized the principle, established in Servidone, that "interest may not be denied merely because costs later found due had not been incurred at the time the claim was filed," id. at 1365, we distinguished Raytheon's claim because termination

of the contract meant that the contractor would never actually incur the prospective costs. Observing that "[i]n both <u>Servidone</u> and <u>J.S. Alberici</u> . . . the contractors completed their contracts and thus <u>actually incurred the costs upon which interest was later awarded</u>," <u>id.</u> (emphasis added), we affirmed the Board's denial of interest on the prospective costs because "[w]e have never held that section 611 permits interest to accrue on costs that . . . were never actually incurred by the contractor." <u>Id.</u>

II

Richlin nevertheless insists that it is entitled to interest. Richlin argues that we must apply the plain-meaning rule in construing section 611, and that the plain meaning of "amounts found due contractors" in section 611 includes any amount (1) for which the contractor was liable and (2) that was "awarded" to a contractor on a CDA claim.[1] We agree that Richlin was obligated by the contract to pay employees the amount required by the Service Contracts Act, and to pay related tax amounts to the appropriate tax authorities.[2] If Richlin had advanced those amounts to the employees and the tax

---

[1] In this connection, Richlin relies on a provision of the Federal Acquisition Regulation ("FAR") that defines "compensation for personal services" to include "all remuneration paid currently or accrued, in whatever form and whether paid immediately or deferred, for services rendered by employees to the contractor." 48 C.F.R. § 31.001 (2003). Richlin asserts that its liability for the back wages under the SCA constituted "accrued" or "deferred" remuneration, and thus "compensation for personal services" that constitutes a cost of the contracts under the FAR. <u>See</u> 48 C.F.R. § 31.103(b) (2003) ("the contracting officer shall incorporate the cost principles and procedures in subpart 31.2 . . . in contracts with commercial organizations as the basis for . . . (4) Price revision of fixed-price incentive contracts"); 48 C.F.R. § 31.205-6(h)(1) (2003) (backpay is a form of "compensation for personal services" constituting "a retroactive adjustment of prior years' salaries or wages," and is "unallowable except [that] [p]ayments to employees resulting from underpaid work actually performed are allowable, if required by a negotiated settlement, order, or court decree").

[2] <u>See</u> <u>Richlin I</u>, 98-1 BCA ¶ 29,651 (discussing provisions in the contract that incorporate SCA requirements); 48 C.F.R. § 52.222-41(c)(1) (obligating contractors

authorities pursuant to the contract, Richlin might have been entitled to interest. But that is not what occurred. Richlin did not advance a penny of its own money, and indeed claimed that it lacked the resources to make such advances. Rather, the government paid the amounts awarded into an escrow account, and those funds were used to pay the employees and the tax authorities. On the basis of these facts, the Board denied Richlin's request for interest on the award because Richlin did not actually pay any of the back wages out of pocket. <u>Richlin IX</u>, 04-2 BCA ¶ 32,670.

We agree with the Board's conclusion. As we have previously recognized, the legislative history of section 611 establishes that in providing for interest on CDA awards, "Congress was concerned with fully compensating contractors for additional costs incurred in a continuing performance under a contract." <u>Fidelity Constr. Co.</u>, 700 F.2d at 1384. The Senate Report accompanying the bill that enacted section 611 explains

> The rights of Government contractors who prevail upon claims against the Government are unique since they have been required by language of the contract . . . to perform the work directed by the Government without stopping to litigate. . . . Since <u>the contractor has been compelled to perform the work with its own money</u> -- in the total absence of contract payments or progress payments -- there can be no equitable adjustment to the contractor until the contractor recovers the entire cost of the additional work. <u>The cost of money to finance this additional work while pursuing the administrative remedy, normally called interest, is a legitimate cost of performing the additional work</u>.

subject to the SCA to pay wages in accordance with SCA regulations); <u>Richlin IX</u>, 04-2 BCA ¶ 32,670 (discussing Richlin's payroll tax liability in detail).

S. Rep. No. 118, 95th Cong., 2d Sess. 32 (1978) (emphasis added).[3]  As the Board recognized, this legislative history supports the view that interest is allowable only when the contractor has incurred a "cost of money to finance [the] additional work."

In keeping with the purpose of the statute, our prior decisions are clear that the contractor can recover interest only on amounts it actually paid.  In Servidone, we held that interest accrued to all awards representing compensation for costs actually incurred by the contractor, even if not incurred until after the claim was filed, because Congress had adopted a bright-line rule for the computation of interest.  Servidone, 931 F.2d at 862.  But in Raytheon, we concluded section 611 did not authorize interest on costs never actually paid by the contractor.  Raytheon, 305 F.3d at 1365.

The reasoning of Raytheon is directly applicable to this case.  The award of back wages did not compensate Richlin for any past, present or future out-of-pocket expense.  Indeed, Richlin conceded at oral argument that it "was never out any money."  The back wages and associated taxes were paid not by Richlin but by the government through the escrow mechanism.  Richlin acted merely as a conduit, and serving as a conduit did not entitle Richlin to receive interest.

CONCLUSION

For these reasons, the decision of the Board is

---

[3] Contrary to Richlin's contention, the portion of the Senate Report relating to the general purposes of section 611 is not made irrelevant by the fact that the text of the statute was later altered to require that interest accrue from the date the claim is filed with the contracting officer.  See Servidone, 931 F.2d at 862-63 (describing the alteration).  The textual change did not alter the purposes of section 611, and statements of legislative intent related to those purposes remain relevant to interpreting the statute.  Cf. Fidelity Constr. Co., 700 F.2d at 1385 (holding irrelevant legislative history specifically related to effect previous version of the altered text).

<u>AFFIRMED.</u>

COSTS

No costs.