# United States Court of Appeals for the Federal Circuit

2006-1055


RICHLIN SECURITY SERVICE COMPANY,

Appellant,

v.

Michael Chertoff, SECRETARY OF HOMELAND SECURITY,

Appellee.


Gilbert J. Ginsburg, Attorney & Counselor-at-Law, of Washington, DC, argued for appellant.

Reginald T. Blades, Jr., Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director.

Appealed from: United States Board of Contract Appeals Department of Transportation

Administrative Judge Eileen P. Fennessy

# United States Court of Appeals for the Federal Circuit

2006-1055

RICHLIN SECURITY SERVICE COMPANY,

Appellant,

v.

Michael Chertoff, SECRETARY OF HOMELAND SECURITY,

Appellee.

—————————————————

DECIDED:  December 26, 2006

—————————————————

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

Opinion for the court filed by Circuit Judge DYK.  Dissenting opinion filed by Senior Judge PLAGER.

DYK, Circuit Judge.

Richlin Security Service Company ("Richlin") appeals a Department of Transportation Board of Contract Appeals ("Board")[1] decision that, under the Equal Access to Justice Act, 5 U.S.C. § 504 (2000) ("EAJA"), paralegal services may only be reimbursed at the cost to the attorney and not at the market rate.  Richlin Sec. Serv.

---

[1]    The Department of Justice and later the Department of Homeland Security designated the Department of Transportation Board of Contract Appeals to hear and decide appeals from their contracting officers' final decisions arising under the Contract Disputes Act of 1978, Pub. L. No. 95-563, 41 U.S.C. § 601 et seq.  See 63 Fed. Reg. 16118, 16134 (Apr. 2, 1998); 68 Fed. Reg. 67868, 67884 (Dec. 4, 2003).

Co., DOTBCA No. 3034E and 3035E, 04-2 BCA ¶ 32,789 (2005). Because we agree that EAJA only permits reimbursement for paralegal services at cost, we affirm.

BACKGROUND

I

This is the fifth time this case has come before this court.[2] The previous decisions concerned two fixed-price contracts executed by Richlin and the then Immigration and Naturalization Service ("INS")[3] in April 1990 and August 1991. Richlin Sec. Serv. Co. v. Chertoff, 437 F.3d 1296, 1297 (Fed. Cir. 2006). Pursuant to the contracts, Richlin agreed to provide guard services for detainees at the Los Angeles International Airport. Id. As the result of a mutual mistake, the contracts misclassified Richlin's employees as "Guard I" rather than "Guard II" for purposes of the wage classification scheme of the Service Contract Act, 41 U.S.C. §§ 351 et seq. (2000). The error resulted in the underpayment of Richlin's employees. Id.

In February 1995, the Department of Labor determined that Richlin's employees were entitled to back wages from Richlin. Id. Richlin then filed a claim against the government for over $1.5 million in back wages and associated taxes on the ground that the original contract price should have been higher to account for the increased wages

---

[2]      Meissner v. Richlin Sec. Serv. Co., No. 97-1472, 1998 WL 228175 (Fed. Cir. May 7, 1998); Richlin Sec. Serv. Co. v. Rooney, No. 00-1134, 2001 WL 744463 (Fed. Cir. July 2, 2001); Richlin Sec. Serv. Co. v. Ridge, No. 03-1344, 2004 WL 1153349 (Fed. Cir. May 14, 2004); Richlin Sec. Serv. Co. v. Chertoff, 437 F.3d 1296 (Fed. Cir. 2006).

[3]      INS was formerly part of the Department of Justice. Effective March 1, 2003, INS became a part of the Department of Homeland Security ("DHS"). 6 U.S.C. § 291 (2000). The Bureau of Immigration and Customs Enforcement within the DHS assumed the duties of the former INS.

and associated costs.  <u>Id.</u>  The contracting officer denied Richlin's claim, and Richlin appealed to the Board.  <u>Id.</u>  at 1297-98.  The government resisted reformation of the contract and defended the subsequent appeals on the ground that Richlin bore the risk of misclassifying its employees.  <u>See</u> <u>Richlin Sec. Serv. Co.</u>, DOTBCA No. 3034E and 3035E, 04-2 BCA ¶ 32,789.  After a series of appeals to the Board and this court, the Board awarded Richlin the amount of the additional wages, payroll taxes, and workers compensation premiums that Richlin was required to pay.  <u>Richlin Sec. Serv. Co.</u>, 02-2 BCA ¶ 31,876, 2002 WL 1042294 (DOTBCA 2002).  We affirmed the Board's decision.  <u>Richlin Sec. Serv. Co. v. Ridge</u>, No. 03-1344, 2004 WL 1153349 (Fed. Cir. May 14, 2004).

After this court affirmed, Richlin timely submitted an application for reimbursement of attorney's fees, expenses, and costs to the Board pursuant to EAJA.  <u>See</u> <u>Richlin Sec. Serv. Co. v. Ridge</u>, No. 03-1344, 2004 WL 1153349 (Fed. Cir. May 14, 2004). This appeal concerns reimbursement under EAJA for paralegal services used in the course of the underlying cases (and in preparing the EAJA application).

II

Gilbert J. Ginsburg is an attorney who began representing Richlin in 1994 after the underlying case had been litigated for some time. Over the course of his representation, Ginsburg used paralegals and separately billed his client (Richlin) for their services at market rates.  Between 1994 and May 23, 2003 (when Richlin filed its EAJA application), Ginsburg's paralegal billing rates increased from $50 per hour to $80 per hour to $95 per hour to $135 per hour.

EAJA provides:

> [a]n agency that conducts an adversary adjudication shall award, to a prevailing party . . . <u>fees and other expenses incurred by that party in connection with that proceeding</u>, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1) (emphasis added).  Subsection 504(b)(1) defines the term "fees and expenses":

> <u>"fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the agency to be necessary for the preparation of the party's case, and reasonable attorney or agent fees (The amount of fees awarded under this section shall be based upon prevailing market rates</u> for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the agency involved, and (ii) <u>attorney or agent fees shall not be awarded in excess of $125 per hour</u> unless the agency determines by regulation that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys or agents for the proceedings involved, justifies a higher fee.)

(emphasis added).  To recover "fees and expenses," the prevailing party must submit an application to the agency within 30 days of "a final disposition."  5 U.S.C. § 504(a)(2).  The application must include "an itemized statement from any attorney, agent, or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed."  <u>Id.</u>

In the EAJA application, Richlin sought reimbursement for $51,793.75 in attorney's fees for work on the underlying cases and $14,225.00 in attorney's fees for preparing the EAJA application.  Richlin also applied for reimbursement of paralegal services at the rate billed to Richlin for paralegal time, with the exception of services for the period after June 1, 2004 (when Ginsburg's billing rate for paralegals had increased to $135 per hour).  Although it is unclear how Richlin computed the amount claimed for

paralegal services, it appears that for services performed after June 1, 2004, Richlin capped the fee request at $95 per hour. Richlin ultimately sought reimbursement for $45,141.10 for 523.8 hours of paralegal time for work on the underlying cases. It also sought an additional $6,760.00 for 68.2 hours of paralegal work preparing the EAJA application.

III

On June 30, 2005, the Board issued a decision finding that "Richlin ha[d] established that it meets the size and net worth requirements for an EAJA award and . . . that Richlin was a prevailing party." The Board then concluded that the government's denial of Richlin's claim was not "substantially justified" under EAJA. See Richlin Sec. Serv. Co., DOTBCA No. 30334E and 3035E, 04-2 BCA ¶ 32,789. The Board found that the government's argument that Richlin bore the risk of the mutual mistake of misclassifying its employees was not substantially justified because the contracts expressly placed the risk of misclassification on the government. Accordingly, the Board held that Richlin was entitled to recover attorney's fees, awarding $43,313 in attorney's fees for the underlying cases and $7,126 in attorney's fees for the preparation of the EAJA application.

Regarding reimbursement for paralegal services, the Board reasoned that EAJA does not expressly provide for the reimbursement of paralegal services at the market rate and that the common definition of "attorney" does not include paralegals. Moreover, the Board noted that EAJA's legislative history defines "expenses" to include "paralegal time (billed at cost)." S. Rep. No. 98-586, 98th Cong., 2d Sess., at 15 (Aug. 8, 1984). As there was no information in the record before the Board regarding the actual cost to

Ginsburg of the paralegal services, the Board took "judicial notice of paralegal salaries in the Washington D.C. area as reflected on the internet." The Board awarded paralegal expenses at a rate of $35 per hour, which it found to be "a reasonable cost to the firm." Accordingly, for paralegal services in connection with underlying cases, the Board awarded $9,394. For services in connection with the EAJA application, the Board awarded $1,200.

Richlin timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10) (2000).

## DISCUSSION

We review the Board's interpretation of EAJA without deference. Brickwood Contractors, Inc. v. United States, 288 F.3d 1371, 1376 (Fed. Cir. 2002); Fanning, Phillips and Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998). As the Supreme Court has held repeatedly, EAJA constitutes a waiver of sovereign immunity and should be strictly construed. See, e.g., Ardestani v. Immigration and Naturalization Serv., 502 U.S. 129, 137 (1991). EAJA "lifts the bar of sovereign immunity for award of fees in suits brought by litigants qualifying under the statute, [but] does so only to the extent explicitly and unequivocally provided." Levernier Const., Inc. v. United States, 947 F.2d 497, 502 (Fed. Cir. 1991) (quoting Fidelity Construction Co. v. United States, 700 F.2d 1379, 1386 (Fed. Cir. 1983)). Thus, we must strictly construe EAJA's fee shifting provision in favor of the government.

I

EAJA generally provides that a "prevailing party" may recover "fees and other expenses" where the position of the government was not "substantially justified." 5

U.S.C. § 504(a)(1). Subsection 504(b)(1)(A) defines "fees and other expenses" and provides that:

> "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the agency to be necessary for the preparation of the party's case, and reasonable attorney or agent fees.

The question here is whether, under EAJA, amounts for paralegal services may be recovered at market rates as part of "fees" or whether they are recoverable only at cost as part of the recovery of "expenses."

As a preliminary matter, we note that EAJA provides that "'fees and expenses' <u>includes</u> the reasonable expenses of expert witnesses . . . and reasonable attorney or agent fees." 5 U.S.C. § 504(b)(1)(A) (emphasis added). Richlin does not appear to argue that paralegal services should be reimbursed on the theory that the statute allows recovery of any and all types of fees. Rather, Richlin argues that they are recoverable under the specific category of "attorney's fees." While Congress' use of the term "includes" does raise the possibility that Congress intended to permit reimbursement of other types of fees, we conclude that the statutory text compels a conclusion that EAJA permits only reimbursement of expert, agent, and attorney's fees.

Section 504(a)(2) outlines the requirements for submitting an EAJA application for "an award of fees and other expenses" and requires "an itemized statement from any attorney, agent, or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." This language (limiting the types of individuals who may file a statement to attorneys, agents, and experts) contemplates that attorney, agent and expert fees are the only categories of "fees." Moreover, EAJA caps the recovery of attorney and agent

fees (capped at $125 per hour subject to a possible cost of living adjustment) and expert witness fees (capped at the highest rate that the agency pays expert witnesses). 5 U.S.C. § 504(b)(1)(A). It would be anomalous to cap the recovery of expert, agent, and attorney's fees and not cap other types of fees. The fact that only attorney, agent and expert fees are capped suggests that no other types of fees are to be awarded. See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 126 S. Ct. 2455, 2461 (2006) (discussed below). Finally, the legislative history does not suggest that Congress was concerned with any other types of fees. In a Senate report issued pursuant to the 1984 reauthorization of EAJA, Congress sought to clarify the definition of "fees and expenses." S. Rep. No. 98-586, 98th Cong., 2d Sess., at 15 (Aug. 8, 1984). The report noted that concern was expressed regarding whether "fees and expenses" included "reasonable out-of-pocket expenses." Id. In noting that out-of-pocket expenses were reimbursable, the Senate report stated that EAJA permitted "the award of 'reasonable expenses of the attorney, agent, or witness' as a separate item, if the attorney, agent, or witness ordinarily charges clients for such expenses." Id. (quoting 46 Fed. Reg. 32900, 32913 (June 25, 1981)). This again suggests that fees of witnesses, attorneys, and agents are the only fees that Congress contemplated. See Cook v. Brown, 68 F.3d 447, 450-51 (Fed. Cir. 1995). For these reasons, we conclude that paralegal services may not be reimbursed under EAJA as part of "fees" in general.

Richlin also does not argue that paralegal services should be reimbursed as part of "agent fees." "EAJA expressly recognizes two different and mutually exclusive types of representative, 'agents' and 'attorneys,' and authorizes recovery of agent fees only in agency, not court, proceedings." Cook, 68 F.3d at 451. According to the legislative

history, "[a]n 'agent fee' may be awarded for the services of a non-attorney where an agency permits such agents to represent parties who come before it."  H.R. Rep. No. 96-1418, at 14 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4993.  There is no suggestion that the paralegals involved here were authorized to represent clients before the Board.  Thus it is apparent that their services should not be reimbursed as "agent fees."

As paralegal services are neither recoverable under the general category of "fees" nor as "agent fees," we must consider whether they fall within the definition of "attorney's fees."

II

The Supreme Court has not addressed the issue of whether paralegal services are included in "attorney's fees" under EAJA.  However, it has addressed the question under section 1988 of the Civil Rights Attorney's Fees Awards Act ("§ 1988").  42 U.S.C. § 1988.  Section 1988 provides that "the court, in its discretion, may allow the prevailing party . . .  a reasonable attorney's fee as part of the costs."  See also § 706(k) of Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 261, 42 U.S.C. § 2000e-5(k) (July 2, 1964) (containing identical language to § 1988).  In Missouri v. Jenkins, 491 U.S. 274, 275 (1989), the Supreme Court considered whether a "reasonable attorney's fee" award under § 1988 should "compensate the work of paralegals and law clerks by applying the market rate for their work."  The Supreme Court reasoned that the term "reasonable attorney's fee" could not "have been meant to compensate only for work performed personally by members of the bar."  Id. at 285. Rather, the Court found that the term "reasonable attorney's fee" refers to "a reasonable fee for the work product of

the attorney." Id. This includes the work of those "whose labor contributes to the work product for which an attorney bills her client," including the work of paralegals. Id. The Court stated that "[w]e thus take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals." Id.

After the Court determined that paralegal services were included in the definition of attorney's fees, it turned to the definition of "reasonable." Id. The Court noted that "[i]n determining how other elements of the attorney's fee are to be calculated, we have consistently looked to the marketplace as our guide to what is 'reasonable.'" Id. Thus, a reasonable fee under § 1988 "is one calculated on the basis of rates and practices prevailing in the relevant market"; "one that grants the successful civil rights plaintiff a fully compensatory fee"; and one that is "comparable to what is traditional with attorneys compensated by a fee-paying client." Id. at 286 (internal citations and quotation marks omitted).

The Court reasoned that to ensure that the fee is "fully compensatory," the reimbursement rate must depend on how attorneys in the community customarily bill for paralegal time. Id. at 286-87. On one hand, if the prevailing practice is to separately bill for paralegal time at the market rate, reimbursement at cost "would not be fully compensatory." Id. at 287. On the other hand, a fee award at the market rate "would be too high" if the prevailing practice was to bill for paralegal time at cost. Id. The Court held that reimbursement for paralegal services would depend on which of the two approaches prevailed in the community. Overall, the Court concluded that allowing reimbursement at the prevailing rate would encourage the use of paralegals which

"encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes."  Id. at 288 (internal citations and quotation marks omitted).

Following the Supreme Court's decision in Jenkins, the Court in West Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83 (1991), considered whether § 1988 permits the recovery of "expert's fees" as part of a "reasonable attorney's fee."  In holding that expert fees were not recoverable as attorney's fees under § 1988,[4] the Court reaffirmed its holding in Jenkins that paralegal services are included in § 1988's definition of attorney's fees.  Id. at 99-100.  The Court noted that, unlike statutes that separately shift expert fees, "[w]e do not know of a single statute that shifts clerk or paralegal fees separately."  Id. at 99-100.  The Court explained that "giving the losing argument the benefit of the doubt" the term "attorney's fees" in Jenkins was "genuinely ambiguous; and we resolved that ambiguity not by invoking some policy that supersedes the text of the statute, but by concluding that charges of this sort had traditionally been included in attorney's fees."  Id. at 100.

Since West Virginia and Jenkins, neither the Supreme Court nor this court has considered the paralegal services issue under EAJA.  In Levernier Constr., Inc. v. United States, 947 F.2d 497 (Fed. Cir. 1991), we held that a court cannot apply a cost of living adjustment (COLA) to the reimbursement of paralegal services under EAJA, 28 U.S.C. § 2412(d).  In so holding, we assumed that "EAJA allows for the recovery of paralegal fees for whom the 'prevailing market rate' is less than $75 per hour," but

---

[4]    In response to the Supreme Court's decision in West Virginia, Congress amended § 1988 to permit the recovery of expert fees.  Pub. L. No. 102-166, § 113, 105 Stat. 1071, 1079 (1991).

rejected the notion that there was any basis for a COLA adjustment even if paralegal services were recovered at the market rate.[5]  Id. at 503.  However, the issue of whether paralegal fees are "attorney's fees" was neither argued nor decided.  Under such circumstances, Levernier's statement and the assumption on which it proceeded is not binding authority.  Boeing N. Am., Inc. v. Roche, 298 F.3d 1274, 1282 (Fed. Cir. 2002) (stating that "under our established precedent we are not bound by" a prior panel decision where "the issue was neither argued nor discussed in [the] opinion"); see also United States v. County of Cook, Illinois, 170 F.3d 1084, 1088 (Fed. Cir. 1999); Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Editors, Inc., 937 F.2d 1572, 1580 (Fed. Cir. 1991) (citing Webster v. Fall, 266 U.S. 507, 511 (1925)).

Richlin also seeks support from the Eleventh Circuit decision in Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988), aff'd on other grounds, Immigration and Naturalization Serv. v. Jean, 496 U.S. 154 (1990).  While Jean concluded that paralegal services must also be included within "attorney's fees" under EAJA, there was no indication that the paralegal services issue was argued, and the Eleventh Circuit simply followed a previous Eleventh Circuit decision (which predated the Supreme Court's decision in Jenkins and West Virginia) holding that, under Title VII, paralegal expenses are reimbursable at the market rate.  See Allen v. United States Steel Corp., 665 F.2d 689, 697 (5th Cir. 1982) (holding in a Title VII case that paralegal services are included in "attorney's fees" and are not "costs" under Fed. R. Civ. P. 54(d)).  The Jean court's discussion of paralegal services was limited to a short paragraph that addressed neither

---

[5]    When Levernier was decided, the EAJA attorney's fee cap was $75.  It has now increased to $125.

the statutory language nor the purpose of EAJA.  Id.  As we now discuss, we do not find

the Jean decision persuasive. [6]

III

Both EAJA and § 1988 provide for the recovery of "attorney's fees," and the

Supreme Court has generally stated that "fee-shifting statutes' similar language is a

strong indication that they are to be interpreted alike."  Indep. Fed. of Flight Attendants

v. Zipes, 491 U.S. 754, 758 n.2 (1989) (internal citations and quotation marks  omitted).[7]

However, where, as here, there are differences in the surrounding language, structure

and purpose of the statute, the Supreme Court has interpreted identical language in

different statutes differently.  For example, in United States v. Reorganized CF&I

Fabricators of Utah, Inc., 518 U.S. 213 (1996), the Supreme Court held that a payment

to the IRS was a tax under Internal Revenue Code section 4971(a) but was a "penalty"

for purposes of awarding priority status under the Bankruptcy Code, 11 U.S.C. §

507(a)(7)(E) (1988).[8]

---

[6]     We also find unpersuasive the few Board of Contract Appeals' decisions that allow recovery of paralegal services at market rates.  These decisions fail to consider the statutory language, purpose and legislative history of EAJA.  See e.g., Kumin Assoc., Inc., 98-2 BCA ¶ 30,008 (LBCA 1998); Lamb Eng'g & Contr. Co., 98-2 BCA ¶ 30,075 (EBCA 1998); Adams Constr. Co., 98-1 BCA ¶ 29,479 (VABCA 1997); Spectrum Leasing Corp., 93-1 BCA ¶ 25,317 (GSBCA 1992).

[7]     See also Marek v. Chesny, 473 U.S. 1, 8-9 (1985); Northcross v. Memphis Bd. of Education, 412 U.S. 427, 428 (1973); Sacco v. United States, 452 F.3d 1305, 1310 (Fed. Cir. 2006) ("The Supreme Court has repeatedly made clear that the various federal attorney's fees statutes should be construed to reach a uniform result.").

[8]     The Supreme Court has held that even identical language in the same statute may be interpreted differently.  See SKF USA Inc. v. United States, 263 F.3d 1369, 1383 (Fed. Cir. 2001) ("there have been rare occasions when the Supreme Court itself has construed the same term differently in different sections of the same statute") (citing Dewsnup v. Timm, 502 U.S. 410, 417 (1992)); see also Dewsnup v. Timm, 502

This principle has been applied in the area of fee-shifting statutes. In <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994), the Court considered the fee-shifting provision of the Copyright Act of 1976, 17 U.S.C. § 505, which provides that "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." The issue was whether the same standard applied to prevailing plaintiffs as to prevailing defendants. <u>Id.</u> at 520. The Court had previously interpreted identical language in § 706(k) of Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, 8 Stat. 261, 42 U.S.C. § 2000e-5(k) (July 2, 1964), to require a more favorable standard for prevailing plaintiffs than for prevailing defendants. <u>See</u> <u>Christiansburg Garmet Co. v. EEOC</u>, 434 U.S. 412, 422 (1978). The Court nonetheless rejected that approach for the Copyright Act, reasoning that "the goals and objectives of the two Acts are . . . not completely similar." <u>Fogerty</u>, 510 U.S. at 524. While plaintiffs under Title VII can "ill afford to litigate their claims against defendants with more resources," both plaintiffs and defendants under the Copyright Act "can run the gamut from corporate behemoths to starving artists." <u>Id.</u> (internal citations and quotation marks omitted).

Here too we conclude that the different statutes require different interpretations. Initially we note that the language of the two statutes is different in important respects. Under § 1988 the effect of denying "fee" recovery for paralegal services would likely have been to deny recovery entirely. Section 1988 provides for the recovery of only attorney's fees and costs, not expenses. In <u>Jenkins</u>, the majority did not dispute the

U.S. 420, 417-18 (1992) (interpreting the term "allowed secured claim" in sections 506(a) and 506(d) of the Bankruptcy Code, 11 U.S.C. § 506, and holding that the two provisions need not be interpreted consistently because statutory text was ambiguous and the legislative history supported different interpretations).

dissent's contention that "[a]bsent specific statutory authorization" the recovery of costs is limited to those innumerated in 28 U.S.C. § 1920. 491 U.S. at 297. As paralegal expenses were not included in the list of "costs," paralegal services could not be awarded unless they were considered part of "fees." In this respect, EAJA differs from § 1988 by also providing for the recovery of "expenses."

Here also, as in <u>Fogerty</u>, we conclude that "the goals and objectives" of Title VII and the statute before us are not the same. The purpose of § 1988 was "to encourage litigation protecting civil rights" and "to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." <u>Kay v. Ehrler</u>, 499 U.S. 432, 436 (1991); <u>see also</u> <u>Ortiz v. Regan</u>, 980 F.2d 138, 140 (2d Cir. 1992) (stating that § 1988 "was designed to allow private individuals a meaningful opportunity to vindicate civil rights violations"). The underlying purpose of "civil rights statutes [is to] vindicate public policies 'of the highest priority' . . . yet 'depend[s] heavily upon private enforcement.'" <u>Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.</u>, 532 U.S. 598, 635 (2001) (quoting S. Rep. No. 94-1011, p. 2-3 (1976)). Thus, people "who bring meritorious civil rights claims, in this light, serve as 'private attorneys general.'" <u>Id.</u> at 635-36.

The purpose of EAJA is narrower. EAJA was enacted because "the expense of correcting error on the part of the government should not rest wholly on the party whose willingness to litigate or adjudicate has helped to define the limits of federal authority." H.R. Rep. No. 96-1418, at 10 (1980). In other words, the purpose of EAJA is to "diminish[] the deterrent effect of the cost of seeking review of agency action." <u>Sullivan</u>

<u>v. Hudson</u>, 490 U.S. 877, 878 (1989).[9]  Thus the purpose of EAJA is not to reimburse all of the costs of the prevailing party but to reimburse costs only when the government's position was not substantially justified and even then to provide only for partial reimbursement.  Since the purpose of EAJA was not to make the prevailing party whole, it is consistent with that purpose to disallow full reimbursement for paralegal fees.

Indeed, it would be inconsistent with the purpose of EAJA to reimburse paralegal fees at the full hourly rate charged to the client limited only by the statutory cap on attorney's fees.  When enacted in 1980, EAJA included a $75 cap on attorney's fees.  In 1996 Congress raised the cap to $125.  Pub. L. No. 104-121, § 231, 110 Stat. 847, 862 (Jan. 3, 1996).  Given that attorney's fees generally far exceed paralegal fees, it seems unlikely that Congress would have capped paralegal services at the same level as attorney's fees.  It also seems unlikely that Congress would have set the maximum fee for paralegals as high as $75 per hour (the equivalent of about $185 in today's dollars)[10]

---

[9]    See, e.g., <u>Abbs v. Principi</u>, 237 F.3d 1342, 1349 (Fed. Cir. 2001) ("Congress enacted the EAJA to diminish the costs of litigating against the government."); <u>Krecioch v. United States</u>, 316 F.3d 684, 686 (7th Cir. 2003) ("The purpose of the EAJA is to eliminate the financial disincentive for people to challenge unreasonable governmental actions."); <u>Sec. & Exch. Comm'n v. Price Waterhouse</u>, 41 F.3d 805, 809 (2d Cir. 1994) ("The provisions of the EAJA, despite its somewhat misleading name, are designed to compensate victims of <u>unjustified</u> litigation by the Government from some of the burdensome expenses and costs to which they were subjected by the Government's taking of unreasonable positions." (emphasis in original)).

[10]    See U.S. Dept. of Labor, Bureau of Labor Statistics, Consumer Price Index: September 2006 (Oct. 18, 2006).

– a level that likely exceeded the then-current billing rate for paralegal services[11] – given the overall desire to cap allowable fees below market rates.

A similar structural feature led the Supreme Court in <u>Arlington Central School District Board of Education</u>, 126 S. Ct. at 2461, to conclude that expert witness fees were not recoverable under the Individuals with Disabilities Education Act ("IDEA"). IDEA directs that "in any action or proceeding brought under this section, the court in its discretion, may award reasonable attorney's fees as part of the costs" to the parents of "a child with a disability" who is the "prevailing party." 20 U.S.C. § 1415(i)(3)(B). The respondents argued that the Supreme Court should interpret "costs" to include expert costs. <u>Arlington</u>, 126 S. Ct. at 2459. In holding that "costs" do not include expert costs, the Court noted that the statute, in sections 1415(i)(3)(C)-(G), "contains detailed provisions that are designed to ensure that [attorney's fees] awards are indeed reasonable."[12] <u>Id.</u> at 2460. "The absence of any comparable provisions relating to expert fees strongly suggests that recovery of expert fees is not authorized." <u>Id.</u> As the

---

[11]    Five years after EAJA was enacted (when EAJA's statutory cap was still $75 per hour), paralegals' time appeared to have been billed at an average hourly rate of $44 in metropolitan areas with populations over one million. Brief for Respondents, <u>Missouri v. Jenkins</u>, 491 U.S. 274 (1989) (No. 88-64) (citing a 1986 "Survey of Law Firm Economics" that contains 1985 data); <u>see also</u> In re Agent Orange Product Liability Litigation, 818 F.2d 226, 231 (2d Cir. 1987) (citing national hourly rates for attorney's from 1980-1984 as $150 for partners and $100 for associates).

[12]    Subsection 1415(i)(3)(C) states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." Subsections 1415(i)(3)(D) and (E) provide that no fees will be awarded for certain legal services, including services performed after certain settlement offers, unless the parent was "substantially justified in rejecting the settlement offer." Subsections 1415(i)(3)(F) and (G) list the conditions for when the award of attorney's fees should be reduced, <u>e.g.</u> when the parent "unreasonably protracted the final resolution of the controversy."

structure of EAJA also contains restrictions to ensure that the award of attorney's fees are reasonable but no comparative provision with respect to paralegal fees (and the attorney's fees cap provides no meaningful limit on paralegal fees), the Supreme Court's decision in Arlington supports the view that Congress did not intend to include paralegal services within the definition of attorney's fees under EAJA.

The allowance of paralegal fees without a meaningful cap would, moreover, create a perverse incentive. If the attorney did the work himself, he would be limited to $125 per hour -- likely far less than his market rate. If he referred the work to a paralegal, he could recover at or near the full market rate for paralegals. The effect would be to encourage lawyers to refer work to paralegals so that full fee recovery could be obtained. This would create a different incentive than the one relied on by the Supreme Court in Jenkins. There the Court concluded that allowing paralegal fee recovery would result in the more efficient performance of legal services by allowing lawyers to use paralegals at a lower hourly rate in accordance with their normal practice. See Jenkins, 491 U.S. at 288. Here treating paralegal fees as attorney's fees would distort the normal allocation of work and result in a less efficient performance of legal services.

Finally, there is also no legislative history supporting the award of paralegal fees at market rates. Quite the contrary, the legislative history of EAJA supports the conclusion that paralegal services are expenses and not fees (or costs). When Congress acted to make EAJA permanent in 1984, the Senate report accompanying the bill clarified the meaning of "fees and expenses." S. Rep. No. 98-586, 98th Cong., 2d Sess., at 15 (Aug. 8, 1984). The Senate report stated that "though no language change

takes place, clarification of the term [fees and expenses] is necessary" because there was a dispute about whether "fees and expenses," as listed in the statute, is exclusive or whether it included other reasonable expenses. Id. The Senate report clarified that the term "fees and expenses" is inclusive and permits the reimbursement of all "reasonable expenses." The report then stated that "[e]xamples of the type of expenses that should ordinarily be compensable include paralegal time (billed at cost)." Id. This language strongly suggests that Congress did not intend to include paralegal expenses in the definition of "attorney's fees," but rather intended that paralegal fees be billed as expenses limited to the attorney's cost.

## CONCLUSION

For these reasons, we hold that paralegal services are not recoverable as fees, but are only recoverable as expenses at the cost to the attorney. Richlin does not challenge the Board's $35 per hour cost figure. Accordingly, we affirm the Board of Contract Appeals' award.

<u>AFFIRMED</u>

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2006-1055


RICHLIN SECURITY SERVICE COMPANY,

Appellant,

v.

Michael Chertoff, SECRETARY OF HOMELAND SECURITY,

Appellee.


PLAGER, <u>Senior Circuit Judge</u>, dissenting.

The EAJA statute uses the phrase "reasonable attorney . . . fees" to describe one element of the award that can be made under this fee-shifting statute.[1] Other than noting that such fees shall be based upon prevailing market rates, the statute itself is of little help in answering the question of whether and how an award for paralegal services may be compensated. In my view our role is not to pick an answer we prefer and distinguish away any law that is inconsistent with that answer. Rather, there is law on point that guides our decision and, in the absence of clear Congressional direction, provides an answer that is consistent and defensible as a matter of law. Accordingly I respectfully dissent.

First, the panel's position is at variance with established Supreme Court law. The same question now before us was before the Court in <u>Missouri v. Jenkins</u>: does a fee-shifting statute that provides for "a reasonable attorney's fee" authorize

---

[1]     5 U.S.C. § 504(b)(1)(A).

"compensating the work of . . . paralegals . . . at the market rates for their services, rather than at their cost to the attorney." 491 U.S. 274, 284 (1989). Just as EAJA does not address the question in express terms, neither does section 1988 of the Civil Rights Attorney's Fees Awards Act (42 U.S.C. § 1988), the statute at issue in Jenkins. Nevertheless, the Supreme Court's answer to the question of whether fees for paralegals were included under the statute was an unequivocal yes. It is of course obvious that the statutes involved—EAJA in our case and § 1988 in the Jenkins case— are part of different statutory programs with different statutory purposes, but the underlying policy of the fee-shifting provisions is the same: to encourage the vindication of legal rights that otherwise might not be vindicated.

With regard to the scope of the phrase "reasonable attorney's fee," the Supreme Court explained:

> Clearly, "a reasonable attorney's fee" cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney. Thus, the fee must take into account the work not only of attorneys, but also of . . . others whose labor contributes to the work product for which an attorney bills her client.

Id. at 285. The position taken by the panel majority in this case, that 'reasonable attorney fees' do not include the work of others who contribute to the work product of the attorney, echoes the view of the lone dissenter on this issue in Jenkins: "[T]he statute itself simply uses the very familiar term 'a reasonable attorney's fee,' which to those untutored in the court's linguistic juggling means a fee charged for services rendered by an individual who has been licensed to practice law." Id. at 296 (Rehnquist, C.J., dissenting). Whether linguistic juggling or not, the Supreme Court's

position on the meaning of the phrase 'attorney's fees' in these fee-shifting statutes leaves little doubt as to how the phrase is to be understood.[2]

Second, in a case decided by this court in 1991, <u>Levernier Construction, Inc. v. United States</u>, 947 F.2d 497 (Fed Cir. 1991), one of the issues before the court was whether, in an award made under EAJA, a cost of living adjustment (COLA) could be applied to paralegal fees awarded at market rates. The court denied the award of the COLA. The court could have reached that result either by concluding that an award of paralegal fees at market rates was not available under EAJA, as the panel here concludes, or by concluding that, even though paralegal fees were awardable, the EAJA statute did not authorize an upward adjustment by way of a COLA. The court did the latter: "[A]lthough the EAJA allows for the recovery of paralegal fees for whom the 'prevailing market rate' is less than $75 per hour [the fee cap at that time], neither the cap on those fees nor the fees themselves may be augmented by a COLA." <u>Id.</u> at 503. Though not analyzed in detail because the Government apparently conceded it, the court thus expressly addressed the issue of paralegal fees and stated its conclusion regarding it.

We can argue over the weight to be given to that conclusion. Though the issue was not argued by the parties, it necessarily was before the court. That predicate issue had to be decided before the COLA question could be; the consequence was to approve the award of paralegal fees, though without the COLA. This is not a passing dictum on which the case could be distinguished. I agree that an issue opined about that is not presented by the facts of the case, and neither argued nor discussed, is not a

---

[2]    Seven of the eight justices who heard the case, including the two who dissented in part, joined the decision on paralegal fees.

holding binding on later panels. The panel majority is of the view that whether the issue in <u>Levernier</u> was sufficiently or properly analyzed to their satisfaction is a question they should decide. My view is that for now <u>Levernier</u> stands as the law of this circuit, and, if it is to be ignored, especially in light of the Supreme Court's position, that should be done by the court en banc, and not summarily by a panel decision.

Third, and finally, there are sound policy reasons for following <u>Levernier</u> and for adopting the Supreme Court's take of the case, even if we thought we had a choice. As the Court noted, by encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours encourages cost-effective delivery of legal services and, by reducing the spiraling cost of rights litigation, furthers the policies underlying such rights-vindicating statutes.[3] <u>See</u> <u>Jenkins</u>, 491 U.S. at 288. This is the view of our sister circuit who addressed this same question both in the civil rights context and in the EAJA context, and concludes as I do,[4] and of the several Board of Contract Appeals decisions that allow recovery of paralegal services at market rates.[5]

Consistent with established law I would reverse the Board decision, and remand for the Board to determine whether local billing practices support a fee award for the paralegal services at market rates (see the discussion of this point in <u>Jenkins</u>, 491 U.S. at 285-87), and what the award amount should be.

---

[3] The question of whether caps should be imposed on the fees, and any "anomalies" that may result therefrom, is a question of legislative policy, not judicial rationalizing.

[4] <u>Jean v. Nelson</u>, 863 F.2d 759, 778 (11th Cir. 1988).

[5] <u>See e.g.</u>, <u>Kumin Assocs., Inc.</u>, 98-2 BCA ¶ 30,008 (LBCA 1998) (citing and following <u>Levernier</u>); <u>see also</u> maj. op. at 13 n.6 (and cases cited therein).