(Slip Opinion)     OCTOBER TERM, 2007     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RICHLIN SECURITY SERVICE CO. *v.* CHERTOFF, SECRETARY OF HOMELAND SECURITY

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 06–1717.  Argued March 19, 2008—Decided June 2, 2008

After prevailing against the Government on a claim originating in the Department of Transportation's Board of Contract Appeals, petitioner (Richlin) filed an application with the Board for reimbursement of attorney's fees, expenses, and costs, pursuant to the Equal Access to Justice Act (EAJA).  The Board concluded, *inter alia,* that Richlin was not entitled to recover paralegal fees at the rates at which it was billed by its law firm, holding that EAJA limited such recovery to the attorney's cost, which was lower than the billed rate. In affirming, the Federal Circuit concluded that the term "fees," for which EAJA authorizes recovery at "prevailing market rates," embraces only the fees of attorneys, experts, and agents.

*Held:* A prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates.  Pp. 4–18.

(a) EAJA permits a prevailing party to recover "fees and other expenses incurred by that party in connection with" administrative proceedings, 5 U. S. C. §504(a)(1), including "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project . . . , and reasonable attorney or agent fees," and bases the amount of such fees on "prevailing market rates," §504(b)(1)(A).  Because Richlin "incurred" "fees" for paralegal services in connection with its action before the Board, a straightforward reading of the statute demonstrates that Richlin was entitled to recover fees for the paralegal services it purchased at the market rate for such services.  The Government's contrary reading—that expenditures for paralegal services are "other expenses" recoverable only at "reasonable cost"—is unpersuasive.  Section 504(b)(1)(A) does not

clearly distinguish between the rates at which "fees" and "other expenses" are reimbursed. Even if the statutory text supported the Government's dichotomy, it would hardly follow that amounts billed for paralegal services should be classified as "expenses" rather than as "fees." Paralegals are surely more analogous to attorneys, experts, and agents than to studies, analyses, reports, tests, and projects. Even if the Court agreed that EAJA limited paralegal fees to "reasonable cost," it would not follow that the cost should be measured from the perspective of the party's attorney rather than the client. By providing that an agency shall award a prevailing party "fees and other expenses . . . *incurred by that party"* (emphasis added), §504(a)(1) leaves no doubt that Congress intended the "reasonable cost" of §504(b)(1)(A)'s items to be calculated from the litigant's perspective. It is unlikely that Congress, without even mentioning paralegals, intended to make an exception of them by calculating their cost from their employer's perspective. It seems more plausible that Congress intended all "fees and other expenses" to be recoverable at the litigant's "reasonable cost," subject to the proviso that "reasonable cost" would be deemed to be "prevailing market rates" when such rates could be determined. Pp. 4–8.

   (b) To the extent that some ambiguity subsists in the statutory text, this Court need look no further to resolve it than *Missouri* v. *Jenkins*, 491 U. S. 274, where the Court addressed a similar question with respect to the Civil Rights Attorney's Fees Awards Act of 1976— which provides that a court "may allow the prevailing party . . . a reasonable attorney's fee as part of the costs," 42 U. S. C. §1988— finding it "self-evident" that "attorney's fee" embraced the fees of paralegals as well as attorneys, 491 U. S., at 285. EAJA, like §1988, entitles certain parties to recover "reasonable attorney . . . fees," §504(b)(1)(A), and makes no mention of the paralegals, "secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client," 491 U. S., at 285. Thus, EAJA, like §1988, must be interpreted as using the term "attorney . . . fees" to reach fees for paralegal services as well as compensation for the attorney's personal labor, making "self-evident" that Congress intended that term to embrace paralegal fees. Since §504 generally provides for recovery of attorney's fees at "prevailing market rates," it follows that paralegal fees must also be recoverable at those rates. The Government's contention that *Jenkins* found paralegal fees recoverable as "attorney's fee[s]" because §1988 authorized no other recoverable "expenses" finds no support in *Jenkins* itself*,* which turned not on extratextual policy goals, but on the "self-evident" proposition that "attorney's fee[s]" had historically included paralegal fees. Indeed, this Court rejected the Government's inter-

Syllabus

pretation of *Jenkins* in *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, concluding that a petitioner seeking expert witness fees under §1988 could not rely on *Jenkins* for the proposition that §1988's "broad remedial purposes" allowed recovery of fees not expressly authorized by statute.  Pp. 8–11.

  (c) Even assuming that some residual ambiguity in the statutory text justified resorting to extratextual authorities, the legislative history cited by the Government does not address the question presented and policy considerations actually counsel in favor of Richlin's interpretation.  Pp. 11–18.

472 F. 3d 1370, reversed and remanded.

  ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined, in which SCALIA, J., joined except as to Part III–A, and in which THOMAS, J., joined except as to Parts II–B and III.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1717

RICHLIN SECURITY SERVICE COMPANY, PETITIONER *v.* MICHAEL CHERTOFF, SECRETARY OF HOMELAND SECURITY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 2, 2008]

JUSTICE ALITO delivered the opinion of the Court.*

The question presented in this case is whether the Equal Access to Justice Act (EAJA), 5 U. S. C. §504(a)(l) (2006 ed.) and 28 U. S. C. §2412(d)(1)(A) (2000 ed.), allows a prevailing party in a case brought by or against the Government to recover fees for paralegal services at the market rate for such services or only at their cost to the party's attorney. The United States Court of Appeals for the Federal Circuit limited recovery to the attorney's cost. 472 F. 3d 1370 (2006). We reverse.

I

Petitioner Richlin Security Service Co. (Richlin) is a small California proprietorship. In the early 1990's, it was engaged by the former Immigration and Naturalization Service (INS) to provide guard services for detainees at Los Angeles International Airport. Through mutual mistake, the parties' two contracts misclassified Richlin's

---

*JUSTICE SCALIA joins this opinion except as to Part III–A, and JUSTICE THOMAS joins this opinion except as to Parts II–B and III.

employees under the Service Contract Act of 1965, 41 U. S. C. §351 *et seq.* The Department of Labor discovered the misclassification and ordered Richlin to pay its employees back wages. Richlin responded by filing a claim against the Government with the Department of Transportation's Board of Contract Appeals (Board). The claim sought reformation of the two contracts in order to force the Government to make additional payments necessary to cover Richlin's liability under the Service Contract Act. Richlin prevailed after extensive litigation, and the Board entered an award in its favor.

Richlin then filed an application with the Board for reimbursement of its attorney's fees, expenses, and costs pursuant to EAJA. Under EAJA, "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." 5 U. S. C. §504(a)(1). In addition to its other fees and expenses, Richlin sought $45,141.10 for 523.8 hours of paralegal work on its contract claim and $6,760 for 68.2 hours of paralegal work on the EAJA application itself.

The Board granted Richlin's application in part. *Richlin Security Service Co.* v. *Department of Justice*, Nos. WRO–06–90, WRO–03–91, 2005 WL 1635099 (June 30, 2005), App. to Pet. for Cert. 25a. It found that Richlin met §504(b)(1)(B)'s eligibility requirements, see *id.,* at 30a, and that the Government's position had not been "substantially justified" within the meaning of §504(a)(1), *id.,* at 32a. It concluded, however, that Richlin was not entitled to recover its paralegal fees at the rates (ranging from $50 per hour to $95 per hour) at which Richlin was billed

by its law firm.[1]  See *id.,* at 39a.  The Board held that
EAJA limited recovery of paralegal fees to "the cost to the
firm rather than . . . the billed rate."  *Ibid.*  Richlin had not
submitted any evidence regarding the cost of the paralegal
services to its law firm, see *ibid.*, but the Board found that
"$35 per hour is a reasonable cost to the firm[,] having
taken judicial notice of paralegal salaries in the Washing-
ton D. C. area as reflected on the internet."  *Id.,* at 42a–
43a.

  A divided panel of the Federal Circuit affirmed.  472
F. 3d 1370.  The court construed the term "fees," for which
EAJA authorizes recovery at "prevailing market rates,"
§504(b)(1)(A), as embracing only the fees of attorneys,
experts, and agents.[2]  See *id.,* at 1374.  The court declined
to follow the contrary decision of the Eleventh Circuit in
*Jean* v. *Nelson*, 863 F. 2d 759 (1988), aff'd *sub nom. Com-
missioner* v. *Jean*, 496 U. S. 154 (1990).  It also distin-
guished this Court's decisions in *Missouri* v. *Jenkins*, 491
U. S. 274 (1989), and *West Virginia Univ. Hospitals, Inc.* v.
*Casey*, 499 U. S. 83 (1991), reasoning that those cases
involved a different fee-shifting statute with different
"'goals and objectives.'"  472 F. 3d, at 1375–1377, 1379
(discussing the Civil Rights Attorney's Fees Awards Act of
1976, 42 U. S. C. §1988).  The court instead found support
for its interpretation in EAJA's legislative history, see 472
F. 3d, at 1381 (citing S. Rep. No. 98–586 (1984) (hereinaf-
ter S. Rep.)), and in considerations of public policy, see 472
F. 3d, at 1380–1381.

_____

  [1] Richlin was actually billed for paralegal services at rates as high as
$135 per hour, but it amended its application to cap the fees at $95 per
hour.  See App. to Pet. for Cert. 39a; Brief for Petitioner 9; Brief for
Respondent 4, n. 2.
  [2] Some  agencies  allow  nonattorney  representatives,  known  as
"agents," to assist parties with the presentation of their cases.  See
n. 10, *infra.*  Richlin has never claimed that a paralegal may qualify as
an "agent" within the meaning of §504(b)(1)(A).

Judge Plager dissented. He believed that the authorities distinguished by the majority (particularly this Court's decisions in *Jenkins* and *Casey*) were indistinguishable. He also identified "sound policy reasons for . . . adopting the Supreme Court's take of the case, even if we thought we had a choice." 472 F. 3d, at 1383.

Richlin petitioned for rehearing, pointing out that the approach taken by the Eleventh Circuit in *Jean* had been followed by several other Circuits. See 482 F. 3d 1358, 1359 (CAFed. 2007) (citing *Role Models Am., Inc.* v. *Brownlee*, 353 F. 3d 962, 974 (CADC 2004); *Hyatt* v. *Barnhart*, 315 F. 3d 239, 255 (CA4 2002); and *Miller* v. *Alamo*, 983 F. 2d 856, 862 (CA8 1993)). The panel denied rehearing over Judge Plager's dissent, and the full court denied rehearing en banc. See App. to Pet. for Cert. 57a.

We granted certiorari. 551 U. S. ___ (2007).

## II

### A

EAJA permits an eligible prevailing party to recover "fees and other expenses incurred by that party in connection with" a proceeding before an administrative agency. 5 U. S. C. §504(a)(1). EAJA defines "fees and other expenses" as follows:

> "'[F]ees and other expenses' includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the agency to be necessary for the preparation of the party's case, and reasonable attorney or agent fees (The amount of fees awarded under this section shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the agency involved, and (ii) attorney or agent fees shall not be

awarded in excess of $125 per hour unless the agency
determines by regulation that an increase in the cost
of living or a special factor, such as the limited avail-
ability of qualified attorneys or agents for the proceed-
ings involved, justifies a higher fee.)"  §504(b)(1)(A).[3]

In this case, Richlin "incurred" "fees" for paralegal services
in connection with its contract action before the Board.
Since §504(b)(1)(A) awards fees at "prevailing market
rates," a straightforward reading of the statute leads to
the conclusion that Richlin was entitled to recover fees for
the paralegal services it purchased at the market rate for
such services.

The Government resists this reading by distinguishing
"fees" from "other expenses."  The Government concedes
that "fees" are reimbursable at "prevailing market rates,"
but it insists that "other expenses" (including expenses for
"any study, analysis, engineering report, test, or project")
are reimbursable only at their "reasonable cost."  And in
the Government's view, outlays for paralegal services are
better characterized as "other expenses" than as "fees."
The Government observes that the second sentence of
§504(b)(1)(A), which explains how to calculate awards for
"fees," refers to attorneys, agents, and expert witnesses,
without mentioning paralegals.  From this omission, the
Government infers that Congress intended to treat expen-
ditures for paralegal services not as "fees" but as "other
expenses," recoverable at "reasonable cost."

We find the Government's fractured interpretation of

_____

[3] Virtually identical fee-shifting provisions apply to actions by or
against the Government in federal court.  See 28 U. S. C. §§2412(a)(1),
(d)(2)(A).  The question presented addresses both §§504 and 2412, but
the Federal Circuit's decision resolved only petitioner's §504 applica-
tion, and the Government avers (without challenge from Richlin) that
§2412 "is not at issue in this case."  Brief for Respondent 2, n. 1.  We
assume without deciding that the reasoning of our opinion would
extend equally to §§504 and 2412.  We confine our discussion to §504.

the statute unpersuasive.  Contrary to the Government's contention, §504(b)(1)(A) does not clearly distinguish between the rates at which "fees" and "other expenses" are reimbursed.  Although the statute does refer to the "reasonable cost" of "any study, analysis, engineering report, test, or project," Congress may reasonably have believed that market rates would not exist for work product of that kind.  At one point, Congress even appears to use the terms "expenses" and "fees" interchangeably: The first clause of §504(b)(1)(A) refers to the "reasonable expenses of expert witnesses," while the parenthetical characterizes expert compensation as "fees."  There is no indication that Congress, in using the term "expenses" in one place and "fees" in the other, was referring to two different components of expert remuneration.

Even if the dichotomy that the Government draws between "fees" and "other expenses" were supported by the statutory text, it would hardly follow that amounts billed for paralegal services should be classified as "expenses" rather than as "fees."  The Government concludes that the omission of paralegal fees from §504(b)(1)(A)'s parenthetical (which generally authorizes reimbursement at "prevailing market rates") implies that the recovery of paralegal fees is limited to cost.  But one could just as easily conclude that the omission of paralegal fees from the litany of "any study, analysis, engineering report, test, or project" (all of which are recoverable at "reasonable cost") implies that paralegal fees are recoverable at market rates.  Surely paralegals are more analogous to attorneys, experts, and agents than to studies, analyses, reports, tests, and projects.  Even the Government's brief, which incants the term "paralegal expenses," *e.g.,* Brief for Respondent 4, 5, 6, 7, 8, 9, 10, 11, 12, slips up once and refers to them as "fees," see *id.,* at 35 ("As the court of appeals explained, treating paralegal fees as attorney fees could 'distort the normal allocation of work and result in a less

efficient performance of legal services' under the EAJA
. . .").

But even if we agreed that EAJA limited a prevailing
party's recovery for paralegal fees to "reasonable cost," it
certainly would not follow that the cost should be meas-
ured from the perspective of the party's attorney.[4]  To the
contrary, it would be anomalous to measure cost from the
perspective of the attorney rather than the client.  We do
not understand the Government to contend, for example,
that the "reasonable cost" of an "engineering report" or
"analysis" should be calculated from the perspective of the
firm that employs the engineer or analyst.  Such an inter-
pretation would be tough to square with the statutory
language.  Section 504(a)(1) provides that an agency shall
award to a prevailing party "fees and other expenses
*incurred by that party*."  See also §504(b)(1)(A) (emphasis
added).  That language leaves no doubt that Congress
intended the "reasonable cost" of the specified items in
§504(b)(1)(A) to be calculated from the perspective of the
litigant.  That being the case, we find it hard to believe
that Congress, without even mentioning paralegals, in-
tended to make an exception of them by calculating their
cost from the perspective of their employer rather than the
litigant.  It seems more plausible that Congress intended
all "fees and other expenses" to be recoverable at the

--------

[4]The Government contends that the question presented does not
fairly include the question whether the cost of paralegal services should
be calculated from the perspective of the litigant rather than the
litigant's attorney.  We disagree.  The question presented in Richlin's
petition for certiorari was whether "a prevailing party [may] be
awarded attorney fees for paralegal services at the market rate for such
services, . . . [or at] cost only."  Pet. for Cert. i.  A decision limiting
reimbursement to "cost only" would simply beg the question of how that
cost should be measured.  Since the question presented cannot genu-
inely be answered without addressing the subsidiary question, we have
no difficulty concluding that the latter question is "fairly included"
within the former.  See this Court's Rule 14.1(a).

litigant's "reasonable cost," subject to the proviso that "reasonable cost" would be deemed to be "prevailing market rates" when such rates could be determined.[5]

### B

To the extent that some ambiguity subsists in the statutory text, we need not look far to resolve it, for we have already addressed a similar question with respect to another fee-shifting statute. In *Missouri* v. *Jenkins*, 491 U. S. 274 (1989), we considered whether litigants could recover paralegal fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. §1988. Section 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." We concluded that the term "attorney's fee" in §1988 "cannot have been meant to compensate only work performed personally by members of the bar." 491 U. S., at 285. Although separate billing for paralegals had become "increasingly widespread," *id.,* at 286 (internal quotation marks omitted), attorney's fees had traditionally subsumed both the attorney's personal labor and the labor of paralegals and other individuals who contributed to the attorney's work product, see *id.,* at 285. We were so confident that Congress

_____

[5] It is worth recalling that the Board calculated Richlin's award based on an Internet survey of paralegal salaries in the District of Columbia. Presumably the salaries the Board identified represented the market rate for paralegal compensation. The limited award that the Government wants affirmed was thus based, ironically enough, on the "prevailing market rates" for paralegal services. The fact that paralegal salaries respond to market forces no less than the fees that clients pay suggests to us that this case has more to do with determining whose expenditures get reimbursed (the attorney's or the client's) than with determining how expenditures are calculated (at cost or at market). Since EAJA authorizes the recovery of fees and other expenses "incurred by [the] party," §504(a)(1), rather than the party's attorney, the answer to the former question is plain.

had given the term "attorney's fees" this traditional gloss that we declared it "self-evident" that the term embraced the fees of paralegals as well as attorneys. *Ibid.*

We think *Jenkins* substantially answers the question before us. EAJA, like §1988, entitles certain parties to recover "reasonable attorney ... fees." 5 U. S. C. §504(b)(1)(A). EAJA, like §1988, makes no mention of the paralegals, "secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client." *Jenkins*, *supra*, at 285. And we think EAJA, like §1988, must be interpreted as using the term "attorney ... fees" to reach fees for paralegal services as well as compensation for the attorney's personal labor. The Government does not contend that the meaning of the term "attorney's fees" changed so much between §1988's enactment in 1976 and EAJA's enactment in 1980 that the term's meaning in one statute must be different from its meaning in the other. Under the reasoning of *Jenkins*, we take it as "self-evident" that when Congress instructed agencies to award "attorney ... fees" to certain parties prevailing against the Government, that term was intended to embrace paralegal fees as well. Since §504 generally provides for recovery of attorney's fees at "prevailing market rates," it follows that fees for paralegal services must be recoverable at prevailing market rates as well.

The Government contends that our decision in *Jenkins* was driven by considerations arising from the different context in which the term "attorney's fee" was used in §1988. At the time *Jenkins* was decided, §1988 provided for the recovery of attorney's fees without reference to any other recoverable "expenses." The Government insists that *Jenkins* found paralegal fees recoverable under the guise of "attorney's fee[s]" because otherwise paralegal fees would not be recoverable at all. Since EAJA expressly permits recovery (albeit at "cost") for items other than

attorney, agent, and expert witness fees, the Government sees no reason to give EAJA the broad construction that *Jenkins* gave §1988.

The Government's rationale for distinguishing *Jenkins* finds no support either in our opinion there or in our subsequent decisions. Our opinion in *Jenkins* expressed no apprehension at the possibility that a contrary decision would leave the claimant emptyhanded. This omission is unsurprising, since our decision in *Jenkins* did not rest on the conviction that recovery at market rates was better than nothing. Our decision rested instead on the proposition—a proposition we took as "self-evident"—that the term "attorney's fee" had historically included fees for paralegal services.

Indeed, the Government's interpretation of *Jenkins* was rejected by this Court just two years after *Jenkins* was handed down. In *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, the petitioner sought to recover expert witness fees from the Commonwealth of Pennsylvania pursuant to §1988. The petitioner looked to *Jenkins* for the proposition that the "broad remedial purposes" of §1988 allowed the recovery of fees not expressly authorized by statute. The Court rejected that interpretation of *Jenkins:*

> "The issue [in *Jenkins*] was not, as [petitioner] contends, whether we would permit our perception of the 'policy' of the statute to overcome its 'plain language.' It was not remotely plain in *Jenkins* that the phrase 'attorney's fee' did not include charges for law clerk and paralegal services. Such services, like the services of 'secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product,' had traditionally been included in calculation of the lawyers' hourly rates. Only recently had there arisen 'the increasingly widespread custom of sepa-

rately billing for [such] services.' By contrast, there has never been, to our knowledge, a practice of including the cost of expert services within attorneys' hourly rates. There was also no record in *Jenkins*—as there is a lengthy record here—of statutory usage that recognizes a distinction between the charges at issue and attorney's fees." *Casey*, *supra*, at 99 (quoting 491 U. S., at 285–286) (some internal quotation marks and citations omitted).[6]

Our analysis of *Jenkins* in *Casey* refutes the Government's claim that *Jenkins* had to stretch the law to fit hard facts. As *Casey* shows, our decision in *Jenkins* turned not on extratextual policy goals but on the traditional meaning of the term "attorney's fees."

## III

The Government parries this textual and doctrinal analysis with legislative history and public policy. We are not persuaded by either. The legislative history cited by the Government does not address the question presented, and policy considerations actually counsel in favor of Richlin's interpretation.

## A

The Government contends first that a 1984 Senate Report accompanying the bill that reenacted EAJA[7] unequivocally expressed congressional intent that paralegal

---

[6] Following our decision in *Casey*, Congress amended §1988 to allow parties to recover "expert fees as part of the attorney's fees." Civil Rights Act of 1991, §113(a), 105 Stat. 1079 (codified at 42 U. S. C. §1988(c)).

[7] The version of EAJA first enacted in 1980 had a sunset provision effective October 1, 1984. See §§203(c), 204(c), 94 Stat. 2327, 2329. Congress revived EAJA without the sunset provision (but with certain other amendments) in 1985. See Act of Aug. 5, 1985, §§1–2, 6, 99 Stat. 183–186; see also n. 8, *infra;* see generally *Scarborough* v. *Principi*, 541 U. S. 401, 406–407 (2004) (summarizing EAJA's legislative history).

fees should be recovered only *"'at cost.'"* Brief for Respondent 29 (quoting S. Rep., at 15; emphasis in original). It next contends that the Report tacitly endorsed the same result by approving model rules of the Administrative Conference of the United States and a pre-EAJA Sixth Circuit decision, both of which had adopted schemes of reimbursement at attorney cost. See Brief for Respondent 29. We are not persuaded. In our view, the legislative history does not even address the question presented, much less answer it in the Government's favor.[8]

The Senate Report accompanying the 1984 bill remarked that "[e]xamples of the type of expenses that should ordinarily be compensable [under EAJA] include paralegal time (billed at cost)." S. Rep., at 15. The Government concludes from this stray remark that Congress intended to limit recovery of paralegal fees to attorney cost. But as we observed earlier, the word "cost" could just as easily (and more sensibly) refer to the client's cost rather than the attorney's cost. Under the former interpretation, the Senate Report simply indicates that a prevailing party who satisfies EAJA's other requirements should generally be able to "bil[l]" the Government for any reasonable amount the party paid for paralegal services.

–––––––––––

[8] Richlin makes a threshold challenge to the legitimacy of the 1984 Senate Report as legislative history, observing that the bill it accompanied was vetoed by the President before being enacted by a subsequent Congress. See Brief for Petitioner 27 ("To the extent that legislative history serves as legitimate evidence of congressional intent, it does so only because it is presumed to have been ratified by Congress and the President when the relevant legislation was enacted" (citing Siegel, The Use of Legislative History in a System of Separated Powers, 53 Vand. L. Rev. 1457, 1522 (2000); and *Sullivan* v. *Finkelstein*, 496 U. S. 617, 631–632 (1990) (SCALIA, J., concurring in part))). But see *Melkonyan* v. *Sullivan*, 501 U. S. 89, 96 (1991) (relying on the same Report to interpret EAJA's 1985 amendments). Because the legislative history is a wash in this case, we need not decide precisely how much weight it deserves in our analysis.

Since the litigant's out-of-pocket cost for paralegal services would normally be equal to the "prevailing market rat[e]" for such services, 5 U. S. C. §504(b)(1)(A), the Senate Report could easily support Richlin's interpretation.

Moreover, even if the Government's interpretation of the word "cost" is correct, that interpretation would not be inconsistent with our decision today. "Nothing in [EAJA] requires that the work of paralegals invariably be billed separately. If it is the practice in the relevant market not to do so, or to bill the work of paralegals only at cost, that is all that [EAJA] requires." *Jenkins, supra,* at 288 (construing 42 U. S. C. §1988). We thus recognize the possibility, as we did in *Jenkins*, that the attorney's cost for paralegal services will supply the relevant metric for calculating the client's recovery. Whether that metric is appropriate depends on market practice. The Senate Report, even under the Government's contestable interpretation, is not inconsistent with that conclusion. On the contrary, the Report implies that courts should look to market practice in setting EAJA awards. See S. Rep., at 15 ("The Act should not be read . . . to permit reimbursement for items *ordinarily* included in office overhead, nor for any other expenses not reasonable in amount, necessary for the conduct of the litigation, *and customarily chargeable to clients*" (emphasis added)). Beyond that vague guidance, the Report does not address the critical question in this case: whether EAJA limits recovery of paralegal fees to attorney cost *regardless of market practice*. As such, the Report does not persuade us of the soundness of the Government's interpretation of the statute.

The Government's reliance on the Sixth Circuit's decision in *Northcross* v. *Board of Ed. of the Memphis City Schools*, 611 F. 2d 624 (1979), founders for the same reason. The Government contends that *Northcross* approved of reimbursement at attorney cost under 42 U. S. C. §1988

and that the 1984 Senate Report, by endorsing *Northcross*, tacitly approved of the same result for EAJA. See Brief for Respondent 30 (citing *Northcross*, *supra*, at 639). The problem again is that *Northcross* did not decide whether a litigant's recovery for paralegal services would be limited to his attorney's cost even in a market where litigants were customarily billed at "prevailing market rates." Although the Sixth Circuit seems to have been aware that paralegal services could be billed to clients at market rates, some language in its opinion suggests that the court assumed that attorneys billed their clients only for the out-of-pocket cost of paralegal services.[9] Since *Northcross* does not clearly address the question presented, its endorsement in the Senate Report means little.

Finally, the model rules cited in the Senate Report may actually support Richlin's position. The implementing release for the rules describes the Administrative Conference's approach to paralegal costs as follows:

> "Commenters also took varying positions on whether paralegal costs should be chargeable as expenses. We do not believe the rules should discourage the use of paralegals, which can be an important cost-saving measure. On the other hand, lawyers' practices with respect to charging for paralegal time, as with respect to other expenses such as duplicating, telephone

---

[9] Compare *Northcross*, 611 F. 2d, at 638 ("[A] scale of fees as is used by most law firms is appropriate to use in making fee awards pursuant to Section 1988. The use of broad categories, differentiating between paralegal services, in-office services by experienced attorneys and trial service, would result in a fair and equitable fee") with *id.,* at 639 ("The authority granted in section 1988 to award a reasonable attorney's fee included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of §1988" (internal quotation marks omitted)).

charges and the like, vary according to locality, field of practice, and individual custom.  We have decided not to designate specific items as compensable expenses.  Instead, we will adopt a suggestion of the Treasury Department and revise the model rule to provide that expenses may be charged as a separate item if they are ordinarily so charged to the attorney's clients." Administrative Conference of the U. S., Equal Access to Justice Act: Agency Implementation, 46 Fed. Reg. 32905 (1981).

To the extent that this passage addresses the question presented at all, it seems to take the same approach that the Court took in *Jenkins* and that we adopt today: it allows the recovery of paralegal fees according to "the practice in the relevant market." 491 U. S., at 288.  But we think the fairest interpretation of the implementing release is that it does not address how awards for paralegal fees should be calculated.  Instead, it addresses the anterior question whether courts may award paralegal fees under EAJA at all.  See, *e.g.,* 46 Fed. Reg. 32905 (responding to comments urging that the model rules "identify particular expenses of attorneys and witnesses that are compensable").  Like the other legislative authorities cited by the Government, the model rules fail to persuade us of the soundness of the Government's interpretation because they fail to clearly address the question presented.

B

We find the Government's policy rationale for recovery at attorney cost likewise unpersuasive.  The Government argues that market-based recovery would distort litigant incentives because EAJA would cap paralegal and attorney's fees at the same rate.  See 5 U. S. C. §504(b)(1)(A) ("[A]ttorney or agent fees shall not be awarded in excess of $125 per hour unless the agency determines by regulation

that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys or agents for the proceedings involved, justifies a higher fee"). The Government observes that paralegal rates are lower than rates for attorneys operating in the same market. If EAJA reimbursed both attorney time and paralegal time at market rates, then the cap would clip more off the top of the attorney's rates than the paralegal's rates. According to the Government, a market-based scheme would encourage litigants to shift an inefficient amount of attorney work to paralegals, since paralegal fees could be recovered at a greater percentage of their full market value.

The problem with this argument, as Richlin points out, is that it proves too much. The same reasoning would imply that agent fees should not be recoverable at market rates.[10] If market-based recovery of paralegal time resulted in excessive reliance on paralegals, then market-based recovery of agent time should result in excessive reliance on agents. The same reasoning would also imply that fees for junior attorneys (who generally bill at lower rates than senior attorneys) should not be recoverable at market rates. Cf. *Jenkins*, *supra*, at 287 ("If the fees are consistent with market rates and practices, the 'windfall' argument has no more force with regard to paralegals than it does for associates"). Yet despite the possibility that market-based recovery of attorney and agent fees would distort litigant incentives, §504 unambiguously

--------

[10] "'An "agent fee" may be awarded for the services of a non-attorney where an agency permits such agents to represent parties who come before it.'" Brief for Respondent at 11, n. 4 (quoting H. R. Rep. No. 96–1418, p. 14 (1980)); see also n. 2, *supra*. Since federal courts generally do not permit nonattorneys to practice before them, the portion of EAJA governing awards for parties to federal litigation makes no provision for agent fees. Compare 28 U. S. C. §2412(d)(2)(A) with 5 U. S. C. §504(b)(1)(A).

authorizes awards of "reasonable attorney or agent fees
. . . [at] prevailing market rates." 5 U. S. C. §504(b)(1)(A).
The Government offers no persuasive reason why Con-
gress would have treated paralegal fees any differently.
The Government's policy rationale thus founders on the
text of the statute, which shows that Congress was un-
troubled by the very distortion the Government seeks to
prevent.

We also question the practical feasibility of the Govern-
ment's interpretation of the statute. The Board in this
case relied on the Internet for data on paralegal salaries in
the District of Columbia, but the Government fails to
explain why a law firm's cost should be limited to salary.
The benefits and perks with which a firm compensates its
staff come out of the bottom line no less than salary. The
Government has offered no solution to this accounting
problem, and we do not believe that solutions are readily
to be found. Market practice provides by far the more
transparent basis for calculating a prevailing party's
recovery under EAJA. It strains credulity that Congress
would have abandoned this predictable, workable frame-
work for the uncertain and complex accounting require-
ments that a cost-based rule would inflict on litigants,
their attorneys, administrative agencies, and the courts.

## IV

Confronted with the flaws in its interpretation of the
statute, the Government seeks shelter in a canon of con-
struction. According to the Government, any right to
recover paralegal fees under EAJA must be read narrowly
in light of the statutory canon requiring strict construction
of waivers of sovereign immunity. We disagree.

The sovereign immunity canon is just that—a canon of
construction. It is a tool for interpreting the law, and we
have never held that it displaces the other traditional tools
of statutory construction. Indeed, the cases on which the

Government relies all used other tools of construction in tandem with the sovereign immunity canon. See *Ardestani* v. *INS*, 502 U. S. 129, 137 (1991) (relying on the canon as "reinforce[ment]" for the independent "conclusion that any ambiguities in the legislative history are insufficient to undercut the ordinary understanding of the statutory language"); *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 682, 685–686 (1983) (relying on the canon in tandem with "historic principles of fee-shifting in this and other countries" to define the scope of a fee-shifting statute); *Department of Energy* v. *Ohio*, 503 U. S. 607, 626–627 (1992) (resorting to the canon only after a close reading of the statutory provision had left the Court "with an unanswered question and an unresolved tension between closely related statutory provisions"); see also *Smith* v. *United States*, 507 U. S. 197, 201–203 (1993) (invoking the sovereign immunity canon only after observing that the claimant's argument was "undermine[d]" by the "common-sense meaning" of the statutory language). In this case, traditional tools of statutory construction and considerations of stare decisis compel the conclusion that paralegal fees are recoverable as attorney's fees at their "prevailing market rates." 5 U. S. C. §504(b)(1)(A). There is no need for us to resort to the sovereign immunity canon because there is no ambiguity left for us to construe.

V

For these reasons, we hold that a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates. The Board's contrary decision was error, and the Federal Circuit erred in affirming that decision. The judgment of the Federal Circuit is reversed, and this case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*