MILAN D. SMITH, JR., Circuit Judge,
concurring in the order denying rehearing en banc:
I write to respond briefly to the dissent filed with this order.
The Privacy Act (Act) unequivocally waives sovereign immunity. Under the Act, if a “court determines that [an] agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of ... actual damages sustained by the individual as a result of the refusal or failure” to comply with the Privacy Act. 5 U.S.C. § 552a(g)(4) (emphases added). In light of that unconditional waiver, we appropriately followed Justice Cardozo’s admonition: “‘The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced.’ ” United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 383, 70 S.Ct. 207, 94 L.Ed. 171 (1949) (quoting Anderson v. Hayes Constr. Co., 243 N.Y. 140, 153 N.E. 28, 29-30 (1926)).
Our dissenting colleague mistakenly asserts that our opinion waives the sovereign immunity of the United States. In fact, Congress did so. Thus, the issue in this case is not the existence of a waiver, but rather the scope of that express waiver, as contemplated in the Act. To that end, we correctly construed the waiver to allow the recovery of nonpecuniary damages, based upon clear congressional intent.
I
The sovereign immunity canon requires that governmental waivers of sovereign immunity be “unequivocally expressed.” United States v. Nordic Village, Inc., 503 U.S. 30, 33-34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (internal quotation marks omitted). The canon has clearly been satisfied in this case. The Act categorically waives the federal government’s immunity from suit and indisputably authorizes the recovery of “actual damages.” The government’s surrender to liability for damages is in the plain text of the Act itself, leaving us only to construe the scope of that surrender.
To construe the scope of this waiver, the panel followed controlling precedent directing the panel to look to the policies or objectives underlying the Act. See, e.g., Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (construing the scope of a waiver of sovereign immunity that reflects “a realistic assessment of legislative intent”); Franchise Tax Bd. of Cal. v. Postal Serv., 467 U.S. 512, 514-16, 521, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984) (rejecting the government’s narrow construction of the scope of the waiver of sovereign immunity under 39 U.S.C. § 401 and holding that “the scope of such a waiver can only be ascertained by reference to underlying congressional policy”); Hopi Tribe v. Navajo Tribe, 46 F.3d 908, 921-22 (9th Cir.1995) (holding that a narrow construction of sovereign immunity under the Navajo-Hopi Settlement Act was improper in light of “the overriding congressional purpose behind the Settlement Act”); United States v. Oregon, 44 F.3d 758, 766 (9th Cir.1994) (“The Supreme Court has repeatedly looked to indicia of Congressional intent in order to construe the scope of the *1020 unequivocally expressed waiver of immunity in the McCarran Amendment.”); In re Town & Country Home Nursing Servs., Inc., 963 F.2d 1146, 1151 (9th Cir.1991) (“It is well established that when the federal government waives its immunity, the scope of the waiver is construed to achieve its remedial purpose.”).
II
The dissent wrongly concludes that the court’s observation that the term “actual damages,” standing alone, is ambiguous necessarily means that the Act does not waive sovereign immunity for nonpecuniary damages. Our jurisprudence has clarified that “[r]ather than focusing just on the word or phrase at issue, this court looks to the entire statute to determine Congressional intent.” Sanchez v. Pac. Powder Co., 147 F.3d 1097, 1099 (9th Cir.1998). “Thus, the structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions.” The Wilderness Soc’y v. U.S. Fish & Wildlife Serv., 353 F.3d 1051, 1060 (9th Cir.2003) (en banc).
Accordingly, we looked to several sources manifesting the Act’s overall objective. We noted the Act’s preambular statement of purpose, wherein Congress stated that “[t]he purpose of this act is to provide certain safeguards for an individual against an invasion of personal privacy by requiring federal agencies ... to ... be subject to civil suit for any damages which occur as a result of willful or intentional action which violates any individual’s rights under this Act.” Pub.L. No. 93-579, § 2(b)(6) (emphasis added). We highlighted the Act’s requirement that agencies maintain records “to protect against any anticipated threats or hazards ... which could result in ... embarrassment.” 5 U.S.C. § 552a(e)(10). We also observed the Act provides a remedy for an agency’s violation that inhibits a fair determination relating to one’s “character.” § 552a(g)(1)(C). Such sources provided helpful guidance in discerning Congress’s remedial aim in enacting the Act.
Understanding that “statutory language cannot be construed in a vacuum,” Davis v. Michigan Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), the panel construed the term “actual damages” in its proper context, see id., to conclude that it unequivocally encompasses nonpecuniary damages. When a statute is ambiguous, the doctrine of sovereign immunity is useful as “a tool for interpreting the law.” Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 128 S.Ct. 2007, 2019, 170 L.Ed.2d 960 (2008). When a statute is not ambiguous, however, “[t]here is no need for us to resort to the sovereign immunity canon.” Id. Because “there [was] no ambiguity left for us to construe,” id., the application of the sovereign immunity canon was unnecessary in this case.
Further, “[t]he sovereign immunity canon is just that — a canon of construction. It is a tool for interpreting the law, and we have never held that it displaces the other traditional tools of statutory construction.” Id.; see also Clark v. Martinez, 543 U.S. 371, 382, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (“The canon is thus a means of giving effect to congressional intent, not of subverting it.”); Chickasaw Nation v. United States, 534 U.S. 84, 94, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (noting that “canons are not mandatory rules” but guides “designed to help judges determine the Legislature’s intent,” and that “other circumstances evidencing congressional intent can overcome their force”). Based upon the clear congressional intent as to the scope of “actual damages” under the Privacy Act, this court properly concluded that the government could not “carry the day by invoking general maxims of judicial policy.” Town & Country, 963 F.2d at 1152.
*1021 III
The dissent misconstrues the relationship between the requirement of showing an “adverse effect” and that of “actual damages.” In Doe v. Chao, the Court held that “an individual subjected to an adverse effect has injury enough to open the courthouse door.” 540 U.S. 614, 624-25, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004). A majority of the circuits in this country, including our own, has held that mental distress or emotional harm is sufficient to constitute an adverse effect. See, e.g., Englerius v. Veterans Admin., 837 F.2d 895, 897 (9th Cir.1988).
Under the dissent’s view, a plaintiff is entitled to establish "standing for an injury under the Act that results in a nonpecuniary harm, but is not entitled to seek actual damages for such a nonpeeuniary injury. Such a construction of the Act would clearly frustrate the intent of Congress. In contrast, our opinion is true to the overall objective of the Act, allowing a plaintiff who demonstrates a nonpeeuniary adverse effect to have the opportunity to recover nonpeeuniary damages, to the extent the plaintiff can proffer the requisite degree of competent evidence that there is a real and tangible nonpeeuniary injury. Our opinion is also consistent with the familiar rule of statutory construction that remedial legislation should be construed broadly to effectuate its purposes. See, e.g., Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1176 (9th Cir.2006) (concluding the remedial nature of the Fair Debt Collection Practices Act required a liberal construction); Stewart Title Guar. Co. v. Park, 250 F.3d 1249, 1252 (9th Cir.2001) (“The purpose of the statute is remedial, and, therefore, should be given a liberal construction!)]”); see also Wilson v. Libby, 535 F.3d 697, 703 (D.C.Cir.2008) (characterizing the Privacy Act as “a comprehensive remedial scheme”).
IV
Controlling precedent in cases such as Franchise Tax Board, Hopi Tribe, and Town & Country, requires us to construe the scope of the Act’s unequivocal waiver of sovereign immunity in light of the underlying congressional policy, and with the purpose of achieving the remedial goal of that waiver. The multiple sources the panel consulted reveal a clear and focused intent on the part of Congress to grant complete relief to those injured by willful violations of the Act. Given that intent, Congress’s provision that the federal government be liable for “actual damages” constitutes an unequivocal expression of the federal government’s waiver of its own sovereign immunity for nonpeeuniary injuries. The panel concluded there was no other plausible explanation for this unqualified language.
In conclusion, our dissenting colleague reminds us that “[o]nly Congress has the keys to unlock our country’s Treasury.” Dissent at 14253-54. But Congress used its keys and opened that door for plaintiffs injured by willful violations of the Act when it expressly gave plaintiffs the right to sue the government for actual damages. A court must not act “as a self-constituted guardian of the Treasury [to] import immunity back into a statute designed to limit it.” Indian Towing Co. v. United States, 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955).[1]
*1022 V
The panel’s decision is compelled by the precedents of the Supreme Court and this court for construing the scope of a waiver of sovereign immunity, and the court properly denied rehearing this case en banc.

. Our opinion will not "saddle the Government with disproportionate liability,” Doe, 540 U.S. at 637, 124 S.Ct. 1204 (Ginsburg, J., dissenting), as the dissent suggests. Our opinion does not relieve the plaintiff of his burden of producing evidence sufficient for a jury to find that the emotional harm he claims to have suffered was tangible and severe enough to give rise to actual damages. It simply gives the plaintiff his day in court so *1022 he can present competent evidence of his injury.